# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERROD DUPREE ALLEN,<br><br>  Plaintiff,<br><br>  v.<br><br>CORTEZ SUMMIT, et al.,<br><br>  Defendants. | Case No. 1:23-cv-01549-SAB<br><br>ORDER SCREENING COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Jerrad Dupree Allen ("Plaintiff"), a pre-trial detainee proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 against Bakersfield Police Department Officers Cortez Summit, Victor Coronado, Dominic Ramirez, Alan Guardado, and Rene Garcia. Plaintiff's complaint is currently before the Court for screening.

## I.

## SCREENING REQUIREMENT

Because Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a case at any time if the Court determines the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient …." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Courts are to liberally construe documents filed *pro se*, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) ("[W]here the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and … afford the petitioner the benefit of any doubt." (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010))). Nonetheless, while factual allegations are accepted as true, legal conclusions are not. Twombly, 550 U.S. at 555. Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

While he currently resides at the Kern County Jail, Plaintiff indicates the actions subject to the instant complaint occurred prior to his detention. (ECF No. 1 at 5.) Plaintiff alleges that, on October 6, 2021, at approximately 12:30 a.m., he was driving a vehicle during a police pursuit that ended when Plaintiff's vehicle flipped four times and collided with an electrical pole. (Id. at 5.) Plaintiff alleges he was unconscious at some point and for an unknown duration after the pursuit ended. (Id.) While Plaintiff was lying face down, Officer Coronado repeatedly bashed and slammed Plaintiff's face into the ground and intentionally pressed his knee into a laceration on Plaintiff's back. (Id.) While Officers Coronado and Garcia were pressing down on Plaintiff's back, Officer Summit kicked Plaintiff in the right side of his stomach. (Id.) Officer Guardado had control of Plaintiff's right arm; Officer Coronado had control of Plaintiff's left arm and head with

his knee stretched over and pressing into Plaintiff's upper back; and Officer Garcia had his right knee placed into the left side of Plaintiff's back. (Id. at 5-6) Plaintiff alleges he sustained a right broken rib; a contusion on the left side of his face; multiple other contusions, lacerations, and hematomas to his face and head; and blunt force trauma which resulted in amnesia, a concussion, and post-traumatic stress as a result of Officers Summit and Coronado's actions. (Id.)

Plaintiff was taken to Kern Medical Center where unidentified officers ran Plaintiff's fingerprints and discovered he had a warrant for his arrest. (Id. at 7.) After discovering Plaintiff's identity, Plaintiff alleges Officer Ramirez intentionally impeded and stopped medical staff from assessing, attending to, and treating Plaintiff's physical injuries. (Id.) Officer Ramirez allegedly told Plaintiff's nurse, "Fuck this guy, he is a registered sex offender, he did all this cause [*sic*] he had a parole violation, I don't have time for this shit, discharge this son of a bitch and let the jail take care of him." (Id.) Plaintiff alleges that at approximately 3:30 a.m., he was found incoherent in a paper suit in an Albertson's parking lot in Bakersfield by a third party. (Id.)

Plaintiff also alleges that on unspecified dates, Officer Ramirez intentionally lied in a report and at the preliminary hearing regarding the October 6, 2021 pursuit to conceal the lack of probable cause to initially pursue the vehicle Plaintiff was driving. (Id. at 9.) Specifically, Officer Ramirez falsely stated that he observed Plaintiff run a red light, that the license plate on the vehicle was not the correct plate for the vehicle, and that Plaintiff was the registered owner of the vehicle on the date of the incident. (Id.) Plaintiff also alleges Officer Summit falsely stated in his report that he struck Plaintiff's right side with his fist. (Id.) Plaintiff further alleges Officer Coronado falsely stated in his report that he held Plaintiff's head into the ground to prevent Plaintiff from hurting himself. (Id.)

### III.
### DISCUSSION

**A.     Statute of Limitations**

Plaintiff appears to bring section 1983 claims that are time-barred. Because 42 U.S.C. § 1983 contains no specific statute of limitations, the statute of limitations for claims under section 1983 is "the personal injury statute of limitations of the state which the cause of action arose."

1  Alameda Books, Inc. v. City of Los Angeles, 631 F.3d 1031, 1041 (9th Cir. 2011).  In California,
2  personal injury claims must be filed within two years.  Id.  However, federal law determines when
3  a cause of action accrues and when the statute of limitations begins to run for a section 1983
4  claim.  Wallace v. Kato, 549 U.S. 384, 388 (2007) (noting that "the accrual date of a § 1983 cause
5  of action is a question of federal law").  Under federal law, a section 1983 claim accrues when the
6  plaintiff "knows or has reason to know of the injury that is the basis of the action." Belanus v.
7  Clark, 796 F.3d 1021, 1025 (9th Cir. 2015) (citations omitted).

8        Here, the accrual date of Plaintiff's section 1983 claims is October 6, 2021, the date he was
9  aware of his alleged injuries.  The statute of limitations of his claim expired two years later, on
10 October 6, 2023.  Because Plaintiff filed the complaint in this action on November 2, 2023, his
11 claim is untimely unless statutory or equitable tolling applies.

12       In actions where the federal court borrows the state statute of limitations, courts should
13 also borrow all applicable provisions for tolling the limitations period found in state law.  Jones v.
14 Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  This applies to both statutory and equitable tolling.

15       In California, a plaintiff "imprisoned on a criminal charge" at the time the cause of action
16 accrued may toll the statute of limitations for a period not to exceed two years.  Cal. Code. Civ.
17 Proc. § 352.1.  "[A] would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of
18 section 352.1 if he or she is serving a term of imprisonment in the state prison." Shaw v.
19 Sacramento Cnty. Sheriff's Dep't, 343 F. Supp. 3d 919, 923 (E.D. Cal. 2018), aff'd in part, rev'd in
20 part and remanded, 810 F. App'x 553 (9th Cir. 2020) (quoting Austin v. Medicis, 21 Cal. App. 5th
21 577, 597 (Ct. App. 2018), reh'g denied (Apr. 11, 2018), review denied (June 13, 2018) (holding
22 that the tolling provision in section 352.1 does not apply during the time a plaintiff spent in a
23 county jail because pretrial custody in a county jail does not qualify as being "imprisoned on a
24 criminal charge")); but see Elliott v. City of Union City, 25 F.3d 800, 803 (9th Cir. 1994) (holding
25 "actual, uninterrupted incarceration is the touchstone" for assessing tolling under § 352(a)(3),
26 which covers all post-arrest custody).

27       The Court *sua sponte* finds Plaintiff is not entitled to tolling under section 352.1 because
28 he was not serving a term of imprisonment in a state prison at the time his claims accrued.

4

Although Plaintiff alleges the Defendant Officers "[took] him into custody" and Officer Ramirez allegedly insinuated to a nurse that Plaintiff should be discharged from the hospital to "let the jail take care of him," Plaintiff alleges that at approximately 3:30 a.m., he was found incoherent in a parking lot in Bakersfield. (ECF No. 1 at 7.) Although Plaintiff is currently a pre-trial detainee at the Kern County Jail, Plaintiff's complaint alleges he has not been in continuous custody from the date of the alleged incident giving rise to his first or second causes of action under section 1983. See Elliott, 25 F.3d at 803. Rather, the complaint indicates on its face that Plaintiff was not arrested until January 5, 2022. (ECF No. 1 at 5-8.) Therefore, the section 1983 two-year statute of limitations period was not tolled under section 352.1(a) and the limitation period appears to have expired before Plaintiff filed this action on November 2, 2023.

"Equitable tolling under California law 'operates independently of the literal working of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Jones, 393 F.3d at 928 (quoting Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003)). "Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (quotation and citation omitted); see also Cota v. Santa Ana Police Dep't, No. 821CV01774MWFJDE, 2022 WL 2193301, at *9 (C.D. Cal. June 17, 2022) ("A party seeking equitable tolling must show that its delay in filing was objectively reasonable under the circumstances").

While Plaintiff alleges has not exhausted administrative remedies because he was barred from receiving any information regarding the incident, Plaintiff does not allege any facts regarding whether he is entitled to equitable tolling of his section 1983 claims. (ECF No. 1 at 5-8.) Plaintiff alleges he was arrested on January 5, 2022, but contends two public defenders withheld unspecified information from Plaintiff until after November 9, 2022. (Id.) Plaintiff also alleges the information was intentionally withheld despite Plaintiff's repeated requests to his public defenders representing him in his state court criminal action to file a grievance regarding the

5

incident. (Id.) However, Plaintiff fails to state how he was barred from receiving information, that Defendants otherwise had notice of the claim, or why Plaintiff otherwise could not file this action within the two-year statutory period.

Failure to comply with the applicable statute of limitations may be grounds for dismissal at the screening stage if it apparent from the face of the complaint that plaintiff cannot "prevail, as a matter of law, on the equitable tolling issue." Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993). However, the Court will allow Plaintiff the opportunity to amend his complaint to allege facts establishing each claim is not time-barred or that tolling applies, if he believes he can do so in good faith.

### B. Plaintiff's First Cause of Action

Plaintiff's first cause of action claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment for excessive force by an officer. (ECF No. 1 at 5.) However, the Eighth Amendment's prohibition of cruel and unusual punishment applies only after conviction and sentencing. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citing Graham v. Connor, 490 U.S. 386, 393 n.6 (1989)). In general, under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted); see also Rhodes v. Chapman, 452 U.S. 337, 346 (1981) ("the Eighth Amendment prohibits punishments which … involve the unnecessary and wanton infliction of pain, … are grossly disproportionate to the severity of the crime," or are otherwise "totally without penological justification.") (citations and quotations omitted).

Here, Plaintiff's claims are not asserted against prison officials, but against Bakersfield police officers, and arise from events occurring prior to even Plaintiff's current pretrial detention. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (noting pretrial detainees "are not convicted prisoners" and therefore have no rights under the Eighth Amendment). Accordingly, irrespective of the apparent time-bar to Plaintiff's first cause of action, Plaintiff cannot state a cognizable claim for cruel and unusual punishment under the Eighth Amendment.

Because Plaintiff is proceeding *pro se*, the Court shall evaluate Plaintiff's first cause of action for excessive force by Defendant Officers on October 6, 2021 within the context of the Fourth Amendment.  A claim of excessive force in the context of an arrest implicates the protection of the Fourth Amendment right to be free from "unreasonable … seizures," not the Eighth Amendment.  U.S. Const. amend. IV; see Graham, 490 U.S. at 394; see also Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) ("[b]ecause [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment."), overruled on other grounds by Castro v. Cnty. of L.A., 833 F.3d 1060 (9th Cir. 2016).

The use of excessive force by law enforcement officers in effectuating an arrest states a valid claim under § 1983.  See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir. 1986).  To state a claim for imposition of excessive force, Plaintiff must allege facts showing that he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable.  See Heitschmidt v. City of Houston, 161 F.3d 834, 839 (5th Cir. 1998).

An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham, 490 U.S. at 388.  The Ninth Circuit has articulated a three-step analysis to evaluate excessive force claims under the framework set forth by the Supreme Court in Graham.  See Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018) (citing Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)).  First, the Court must assess "the severity of the intrusion" "by considering 'the type and amount of force inflicted.'"  Id.  Second, the Court must evaluate the government's interest "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape."  Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396).  Third, the Court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion … to determine whether the force used was 'greater than is reasonable under the circumstances.'"  Id. (citing Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002)).

Because reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Id. (citing Johnson v. Glick, 481 F. 2d 1028, 1033 (2nd Cir. 1973)). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97; see also Ames v. King Cnty., 846 F.3d 340, 348 (9th Cir. 2017). Determination of reasonableness therefore requires consideration of the totality of the circumstances. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011). Consequently, courts consider other factors, such as the availability of alternative methods of capturing or detaining the suspect in determining reasonableness. Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994), cert. denied, 513 U.S. 1148 (1995).

The identified incident relevant to the excessive force inquiry occurred on October 6, 2021, which appears to be time-barred, given Plaintiff's complaint was not filed until November 2, 2023. (ECF No. 1 at 5.) However, in the event Plaintiff can amend his complaint to allege that his claims stemming from the October 6, 2021 incident are not time-barred or are subject to equitable tolling, the Court turns to whether Plaintiff states a claim for excessive force against any of the Defendant Officers.

"Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue." S.R. Nehad v. Browder, 929 F.3d 1125, 1132 (9th Cir. 2019). Plaintiff alleges his interaction with the Defendant Officers was preceded by a police pursuit whereby Plaintiff was driving a vehicle that ended because Plaintiff's vehicle flipped four times and collided with an electrical pole. (ECF No. 1 at 5.) Plaintiff fails to allege he stopped resisting, but states he was unconscious for an unspecified duration of time during which the Defendant Officers took him into custody. (Id.)

Plaintiff alleges that while he was "pinned face down on the ground" and his arms and head were controlled by other officers, Officer Coronado repeatedly bashed and slammed Plaintiff's face into the ground and Officer Summit kicked Plaintiff in the right side of his stomach resulting in a broken rib.[1]  (Id. at 5-6.)  Accepting the allegations as true and drawing inferences in favor of Plaintiff, it is plausible that Officer Coronado and Officer Summit's use of force was not objectively reasonable under the circumstances.  Accordingly, Plaintiff's allegations against Officer Coronado and Officer Summit may be sufficient to meet the "low threshold" for proceeding past screening if Plaintiff can establish his October 6, 2021 claims are not time-barred.  Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012).

However, Plaintiff fails to state a claim for excessive force against Officers Garcia, Guardado, and Ramirez.  Plaintiff expressly notes his injuries were "sustained as a result of the actions of Summit, Cortez and Coronado, Victor."  (ECF No. 1 at 5.)  Additionally, Plaintiff only alleges Officer Guardado had "control of [Plaintiff's] right arm" and Officer Garcia "assisted by placing his right knee into the left side of [Plaintiff's] back" while taking Plaintiff into custody.  Id.  These allegations are insufficient to state an excessive force claim against Officer Guardado or Officer Garcia.  See Graham, 490 U.S. at 396 (noting "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment).  The Court also notes Plaintiff does not allege Officer Ramirez engaged in any force on October 6, 2021 or was even present while Plaintiff was taken into custody.  Accordingly, the Court finds Plaintiff fails to state a claim for excessive force against Officers Guardado, Garcia, and Ramirez.  The Court will afford Plaintiff the opportunity to amend his complaint to allege sufficient facts and establish his excessive force claim is not time-barred, if he believes he can do so in good faith.

### C. Plaintiff's Second Cause of Action

Plaintiff's second claim alleges a violation of the "federal right afforded to prisoners

---

[1] Plaintiff's third cause of action alleges Officer Summit falsely stated in his report that while "three other officers had [Plaintiff] faced down upon the ground, while two of those officers (Coronado # 1358 and Garcia #1209) were pressed down upon the back of [Plaintiff], [Officer Summit] struck the rib cage area of the right side of [Plaintiff's] stomach area with his right hand in the form of a fist." (ECF No. 1 at 9.)  Given his allegation that Officer Summit's statement that he struck Plaintiff with his fist is false, Plaintiff does not appear to be alleging this conduct constituted excessive force or that it even occurred.

regarding access to adequate medical care/assistance." (ECF No. 1 at 7.) While a prisoner may claim inadequate medical care in violation of the Eighth Amendment if the mistreatment rises to the level of deliberate indifference to serious medical needs, Plaintiff cannot state a claim under the Eighth Amendment because, as previously discussed, he was not a prisoner at the time of the alleged inadequate medical care on October 6, 2021. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Medical care claims brought by pretrial detainees "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018). The elements of a pretrial detainee's medical care claim under the due process clause of the Fourteenth Amendment are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125.

Here, however, the complaint does not allege Plaintiff was a pretrial detainee on October 6, 2021. Rather, Plaintiff alleges he was the subject of a police pursuit that ended in a high impact collision at approximately 12:30 a.m., an ambulance took him from the scene to a hospital, and he was found in a parking lot in a hospital gown by 3:30 a.m. (ECF No. 1 at 7.) While Officer Ramirez was present and told Plaintiff's nurse, among other things, "I don't have time for this shit, discharge this son of a bitch and let the jail take care of him," the complaint fails to state whether Plaintiff was detained at the hospital, arrested, transported to jail, or if Officer Ramirez transported Plaintiff from the hospital in the three hour time period on October 6, 2021. The complaint therefore fails to state a claim for inadequate medical care against Officer Ramirez under the Fourteenth Amendment.

"Claims alleging inadequate medical care during and immediately following an arrest are

to be analyzed under the Fourth Amendment." Espinoza v. California Highway Patrol, No. 16-cv-00193, 2016 WL 4943960, at *3 (E.D. Cal. Sept. 16, 2016) (citing Tatum v. City and Cnty. of S.F., 441 F.3d 1090, 1098-99 (9th Cir. 2006)). "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." Tatum, 441 F.3d at 1099 (citing Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986)); see also Est. of Sanchez v. Cnty. of Stanislaus, No. 118CV00977ADABAM, 2023 WL 7612399, at *23 (E.D. Cal. Nov. 14, 2023) (same). "Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." Tatum, 441 F.3d at 1098. "[T]he critical inquiry is not whether the officers did all that they could have done, but whether they did all that the Fourth Amendment requires." Id. at 1099.

Plaintiff alleges am ambulance arrived at the scene at approximately 12:30 a.m. and transported Plaintiff to the emergency room at Kern Medical Center in Bakersfield. (ECF No. 1 at 7.) Thus, it appears that the Defendant Officers promptly summoned medical help and Plaintiff was promptly transported to a hospital. Espinoza, 2016 WL 4943960, at *4 ("Taking an injured detainee to a hospital is a recognized method of satisfying the requirements of the Fourth Amendment"). While Officer Ramirez allegedly made a foully worded statement at the hospital and Plaintiff was later "found incoherent" in a parking lot, Plaintiff fails to allege in more than conclusory fashion that Officer Ramirez impeded and stopped the medical staff from treating Plaintiff or that the nurse heeded Officer Ramirez's instruction to discharge Plaintiff "and let the jail take care of him." (ECF No. 1 at 7.) The complaint therefore fails to state a claim against Officer Ramirez alleging inadequate post-arrest medical care under the Fourth Amendment.

As discussed, Plaintiff cannot state a cognizable claim for inadequate medical care for prisoners under the Eighth Amendment as alleged in the complaint. However, the Court will afford Plaintiff the opportunity to amend his complaint to state a claim for denial of adequate medical care against Officer Ramirez and to establish it is not time-barred, if he believes he can do

so in good faith.

### D. Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges his "[Fourteenth] Amendment right to due process of law and to equal protection of the laws was violated." (ECF No. 1 at 9.) Specifically, Plaintiff alleges that due to Officers Ramirez, Summit, and Coronado's false statements in a preliminary hearing and police reports, Plaintiff's "life/liberty [was taken] away without Due Process of law and placed [Plaintiff] in a position resulting in [his] 8th Amendment right against excessive bail being violated, due to false pretenses." (Id.) However, Plaintiff's complaint is devoid of any facts to support his third cause of action. Most glaringly, the complaint fails to identify any bail amount that is allegedly excessive or that there is an underlying criminal case. Instead, Plaintiff provides conclusory allegations that are unsupported by factual assertions.

The Court notes Plaintiff currently resides in Kern County Jail. It is unclear from the conclusory allegations in the complaint if Plaintiff is challenging existing bail that stems from charges related to the October 6, 2021 incident. To the extent that Plaintiff was arrested on January 5, 2022 for unspecified charges stemming from the October 6, 2021 incident and remains in custody on those charges, properly exhausting state remedies as to his bail hearing or seeking habeas relief are appropriate vehicles to challenge bail in an underlying state court action.

However, Plaintiff's requested relief for his third cause of action is that documentation be filed in Officer Ramirez, Summit, and Coronado's personnel records for violations of Plaintiff's rights. Accordingly, to the extent Plaintiff does not seek habeas relief, "the Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." Galen v. Cnty. of L.A., 477 F.3d 652, 660 (9th Cir. 2007) (citing United States v. Salerno, 481 U.S. 739, 754 (1987)). "[A] police officer may be liable for violation of the Excessive Bail Clause for deliberately or recklessly misleading the judicial officer setting bail, or otherwise preventing the judicial officer from exercising his independent judgment." Morse v. Regents of Univ. of California, Berkeley, 821 F. Supp. 2d 1112, 1116 (N.D. Cal. 2011); see Galen, 477 F.3d 652 (noting a plaintiff must show that police officers "deliberately or recklessly misled" the judicial officer and that the plaintiff's bail "would not have been

1 unconstitutionally excessive but for the officers' representations"). Stated differently, "a plaintiff can state a claim under the Excessive Bail Clause where law enforcement defendants deliberately or recklessly misled a judicial officer, and the natural result of the deception is for bail to be set at a certain level." Darling v. Los Angeles Cnty. Sheriff's Dep't, No. CV 11-7086-RGK (SP), 2015 WL 6560472, at *5 (C.D. Cal. Oct. 15, 2015), report and recommendation adopted, No. CV 11-7086-RGK (SP), 2015 WL 6553410 (C.D. Cal. Oct. 27, 2015), aff'd, 695 F. App'x 216 (9th Cir. 2017).

Plaintiff fails to allege any facts showing a judge in an underlying proceeding would not have set unconstitutionally excessive bail in an unknown amount but for the alleged misrepresentations by the Officers. Plaintiff proffers no facts that tie an unspecified bail amount to Defendant Officers Ramirez, Summit, or Coronado's alleged false statements or that those false statements are the natural result of bail being set at an excessive level. Plaintiff's unsupported legal conclusions are insufficient to survive screening. However, the Court shall afford Plaintiff the opportunity to amend his complaint to include specific factual allegations that raise a plausible inference that a constitutional right was violated.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, the complaint fails to state any cognizable claim for violations of Plaintiff's constitutional rights that is not time-barred. Nonetheless, the Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes, in good faith, are curable. Lopez, 203 F.3d at 1130. If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named Defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678–89. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level …." Twombly, 550 U.S. at 555 (citations admitted).

To the extent Plaintiff must submit a handwritten complaint and supporting exhibits, he is directed to write as legibly as possible and, to the best of his ability, to write his statements on lined paper with only one line of text per line and not multiple text columns. Further, any

amended complaint is limited to 25 pages in length. An amended complaint which exceeds this limit will be stricken.

Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Finally, Plaintiff is reminded that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927. This means Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;
3. The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to a District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **May 17, 2024**

UNITED STATES MAGISTRATE JUDGE